A05A0242. SMITH v. THE STATE.
(614 SE2d 219)

RUFFIN, Chief Judge.

A Henry County jury found Aundra Smith guilty of attempted burglary. Smith appeals, challenging the sufficiency of the evidence. He further argues that the trial court improperly admitted evidence and erred in sentencing him as a recidivist under OCGA § 17-10-7. Finding no error, we affirm.

1. On appeal from a criminal conviction, we review the evidence in a light favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[1] We neither weigh the evidence nor resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.[2]

---

[1] See *Williams v. State*, 268 Ga. App. 384 (1) (601 SE2d 833) (2004).
[2] See id.

Viewed in this manner, the evidence shows that Lieutenant Terry Lunsford of the Henry County Bureau of Police Services was on patrol during the early morning hours of September 19, 2001. At some point, Lunsford drove by a gas station and noticed that its glass door was shattered. He also observed a rock on the ground near the door. Lunsford reported his observations, and the gas station's manager responded to the scene.

Lunsford and the manager reviewed a videotape recording taken by the station's surveillance system. The recording showed that a delivery truck pulled up to the front door, and a man wearing a white sweatshirt exited and threw a rock against the door, which cracked but did not break. The man then drove away in the truck.

At approximately 4:00 that morning, a City of Atlanta police officer manning a roadblock stopped a Pike's Nursery truck driven by Smith. Smith could not produce a driver's license or proof of insurance, and the officer discovered that Smith's license had been suspended. He also learned that the truck had been reported stolen. The officer impounded the truck and arrested Smith for possessing a stolen vehicle, as well as driving with a suspended license. Inside the truck, the officer found a white sweatshirt that Smith claimed as his.

Also that same morning, Henry County police officer Joe Norton received Lunsford's report regarding the gas station incident, as well as a copy of the surveillance videotape. Norton watched the video, made several still photographs from the recording, and determined that the delivery truck pulled up to the gas station at 12:50 a.m. Norton also identified the vehicle as a Pike's Nursery truck. Although the recording did not show the face of the individual who threw the rock at the door, Norton noticed that the man was wearing a white, hooded sweatshirt.

Norton subsequently discovered that the Atlanta police had arrested Smith in an allegedly stolen Pike's Nursery truck just three hours after the gas station incident. Following this lead, Norton interviewed Smith at the Fulton County jail on October 10, 2001. Norton advised Smith of his *Miranda*[3] rights, and Smith agreed to waive those rights. Norton then showed Smith a still photograph made from the gas station surveillance system that showed the suspect.

Smith identified himself as the man in the photograph, stating: " 'Well, that's me. That's me wearing that white sweatshirt.' " Smith further indicated that he had the white sweatshirt with him at the jail, and he agreed to give it to Norton. Both Lunsford and the gas station manager confirmed that the sweatshirt obtained from Smith

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

appeared similar to that worn by the person in the gas station surveillance video. And during his interview with Norton, Smith admitted that he had tried to break into the gas station to steal beer and cigarettes.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he . . . enters or remains within any . . . building . . . or any room or any part thereof."[4] Criminal attempt results "when, with intent to commit a specific crime, [a person] performs any act which constitutes a substantial step toward the commission of that crime."[5] Given the evidence presented, including Smith's admission that he tried to break into the gas station to steal beer and cigarettes, the jury was authorized to find him guilty of criminal attempt to commit burglary.[6]

2. Smith contends that he is entitled to a new trial because the trial court erroneously admitted into evidence his custodial statements to Norton. Specifically, he argues that Norton improperly interrogated him after he had invoked his right to counsel.

The record shows that, by the time Norton interviewed Smith on October 10, 2001, Smith had already requested and been appointed counsel to represent him on the charges pending against him in Fulton County. Based on this fact, Smith contends that Norton violated his Fifth and Sixth Amendment right to counsel by initiating contact with him outside the presence of his attorney.

We disagree. Without dispute, an attorney was appointed on September 26, 2001, to defend Smith against the charges filed in Fulton County, which included theft by taking and driving with a suspended license. Norton, however, interviewed Smith regarding the Henry County charge of attempted burglary. And that interview occurred before formal charges were ever filed against Smith in Henry County.

As noted by the United States Supreme Court, the Sixth Amendment right to counsel is offense-specific: "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."[7] Smith's invocation of his Sixth Amendment right to counsel related to the Fulton County charges, not the Henry County crime.[8] In fact, at the

---

[4] OCGA § 16-7-1.

[5] OCGA § 16-4-1.

[6] See id.; OCGA § 16-7-1; *Legg v. State*, 204 Ga. App. 356, 356-357 (1) (419 SE2d 151) (1992).

[7] (Punctuation omitted.) *McNeil v. Wisconsin*, 501 U. S. 171, 175 (111 SC 2204, 115 LE2d 158) (1991).

[8] See id. at 175-176.

time Norton interviewed him, Smith's Sixth Amendment right had not yet attached to the Henry County attempted burglary, a crime with which he had not been charged.[9] Under these circumstances, the offense-specific Sixth Amendment right to counsel presents no bar to the admission of Smith's statements.

Smith also contends that Norton's interrogation violated his Fifth Amendment right to have counsel present during a custodial interrogation.[10] Once a suspect asserts such right, any interrogation must cease, and he may not be approached for further interrogation unless counsel is present.[11] Furthermore,

> [i]f the police do subsequently initiate an encounter in the absence of counsel . . . , the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.[12]

Based on these principles, Smith claims that his statements are inadmissible, regardless of whether he agreed to waive his right to counsel during the interrogation. In this case, however, the only request for counsel at issue is Smith's *Sixth Amendment* request for an attorney to defend him against the Fulton County charges. Smith has not cited — and we have not found — any evidence that he requested counsel under the Fifth Amendment to represent him during Norton's custodial interrogation.[13] And the Supreme Court has specifically rejected the proposition that a burglary suspect invokes his Fifth Amendment right to counsel simply by requesting an attorney under the Sixth Amendment to defend him against unrelated charges.[14]

---

[9] See id. at 176.

[10] See id. (noting that a person subject to custodial interrogation has a Fifth Amendment right to have counsel present, but that such right can be waived).

[11] See id. at 176-177.

[12] Id. at 177. See also *Woodard v. State,* 256 Ga. App. 464, 465 (1) (568 SE2d 528) (2002) ("In the context of the Fifth Amendment right to counsel, 'once a defendant requests an attorney, all police-initiated interrogation is prohibited, and any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.' ").

[13] See *McNeil,* supra at 178 (Fifth Amendment right to counsel is invoked when suspect makes, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*") (emphasis in original).

[14] See id. at 177-179 ("To find that the defendant invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request.") (punctuation omitted).

At a pretrial *Jackson-Denno* hearing, the trial court determined that Smith waived his *Miranda* rights and voluntarily made the custodial statements to Norton. Smith has not shown that this waiver violated his Fifth or Sixth Amendment right to counsel, and he has not challenged the trial court's voluntariness finding. It follows that the trial court did not err in admitting the statements.[15]

3. Smith also claims that the trial court improperly admitted the still photographs made from the gas station's surveillance videotape because he did not receive the photographs during pretrial discovery. The record shows that, when the State tendered the photographs into evidence, Smith objected that the videotape, rather than the photographs, was "the best evidence." He also asserted that "the photos . . . were not seen in the video." The trial court admitted the photographs over objection. The following day, Smith stated that he "would like to renew [his] objections to the photos [because] [t]hey were not in the discovery packet that [he] received." The trial court noted the objection for the record, but made no further ruling.

The objector retains responsibility for securing a ruling on his objection. And, in order to secure reversal, the objector generally must establish error triangulation, i.e., (1) error, (2) contemporaneous objection, and (3) harm flowing from the error.[16] "In this state it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised."[17] Here, Smith objected to the photographs when the State tendered them into evidence, but he did not object at that point on the ground now asserted. And failure to make a contemporaneous objection on the specific ground urged on appeal results in waiver.[18] Although Smith raised the discovery-related objection the following day — after the trial court had admitted the evidence and the State had rested its case — we cannot deem such objection "contemporaneous."[19] Accordingly, Smith has waived this objection for purposes of appeal.[20]

---

[15] See id. at 177-182; see also *State v. Hatcher*, 264 Ga. 556, 558 (448 SE2d 698) (1994) (although defendant completed an "eligibility affidavit form" for appointed counsel before giving custodial statement, statement was deemed admissible; form could not be viewed as an invocation of defendant's Fifth Amendment right to counsel, and record showed that defendant completed form before adversarial criminal proceedings began, prior to attachment of Sixth Amendment right to counsel).

[16] See *Yang v. Washington*, 256 Ga. App. 239, 243 (2) (c) (568 SE2d 140) (2002).

[17] (Punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997).

[18] See *Tate v. State*, 253 Ga. App. 723, 724 (1) (560 SE2d 303) (2002).

[19] See *Culler v. State*, 277 Ga. 717, 721 (6) (594 SE2d 631) (2004) (objection made the day after evidence admitted at trial is not "contemporaneous").

[20] See *Tate*, supra.

4. Finally, Smith argues that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7. The record shows that the State notified Smith before trial that it intended to present evidence of four prior felony convictions in aggravation of sentencing. The State's evidence showed that Smith had been convicted of burglary and theft by receiving in 1996, burglary in 1997 and theft by receiving in 2001. Given these prior convictions, the trial court sentenced him pursuant to the general recidivist provisions in OCGA § 17-10-7.

Noting that two of his prior convictions were for burglary, Smith contends that he should have been sentenced as a three-time burglary offender under OCGA § 16-7-1 (b), rather than as a general recidivist. We disagree.

In *Norwood v. State*,[21] we recognized that the general recidivist provisions in OCGA § 17-10-7 only apply when no other sentencing scheme controls. Citing this language, Smith argues that the sentencing scheme for repeat burglary offenders in OCGA § 16-7-1 (b) governs his sentence. Smith, however, was not convicted of burglary. The jury found him guilty of criminal attempt, an offense subject to sentencing under OCGA § 16-4-6, rather than OCGA § 16-7-1. We thus fail to see how OCGA § 16-7-1 (b) controls his sentence.

Furthermore, even if Smith had been convicted of burglary in this case, his argument would fail. The record shows that Smith had not only been convicted of two previous burglaries, but two other felonies as well. For purposes of sentencing, therefore, he is more than a repeat burglary offender. He is a four-time felony offender subject to the general recidivist sentencing scheme in OCGA § 17-10-7.[22] Accordingly, the trial court did not err in sentencing Smith.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED APRIL 27, 2005.

*James E. Watkins*, for appellant.
*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.

---

[21] 249 Ga. App. 507, 508 (2) (548 SE2d 478) (2001).
[22] See *Stephens v. State*, 259 Ga. App. 564, 565-566 (578 SE2d 179) (2003); *Mitchell v. State*, 202 Ga. App. 100, 102 (2) (413 SE2d 517) (1991).